[No. 2632–2.    Division Two.    February 14, 1978.]

THE STATE OF WASHINGTON, *Respondent,* v. JERRY JURY, *Appellant.*

*Lar Halpern*, for appellant.

*Jeremy Randolph, Prosecuting Attorney*, for respondent.

PEARSON, C.J.—Defendant Jerry Jury was the driver of a sports car which crashed into a parked truck in the city of Centralia, Washington, on July 17, 1976. There were two passengers in Jury's car: Mike Perry, who escaped injury, and Laura Daarud, who was slightly injured and required emergency medical aid. Jury appeared to some witnesses to be slightly shaken up and perhaps intoxicated, but he did not require emergency care. When Centralia police arrived at the scene and asked to see Jury's license, he became belligerent and had to be placed under arrest. While handcuffed and seated in the back of a police car, he kicked out one of the door windows. Later at the police station, he got into an argument with Officer Nelson regarding a Breathalyzer test, and punched Nelson in the face. Jury was charged with and convicted of first–degree malicious mischief for kicking out the car window, and third–degree assault for punching Officer Nelson. We affirm the conviction for third–degree assault, but reverse the conviction for first–degree malicious mischief.

Counsel on appeal, who was not counsel at trial, alleges that trial counsel provided ineffective assistance of counsel because he was inadequately prepared and inadequately

investigated his client's case. Trial counsel was appointed on August 9, 1976, at defendant's request because defendant could no longer afford retained counsel. The trial was scheduled for September 1; both of the charges involved were felonies. By his own admission, appointed counsel was inexperienced. In an affidavit submitted with this appeal, he states that "this was my first really contested criminal trial."

His affidavit in support of attorney's fees shows that he performed the following work prior to trial: He met with defendant Jury for 1/2 hour on August 10, and for 1/2 hour on August 24; he spent 1/2 hour analyzing the officer's report on August 22; he labored 1 hour to prepare an insanity plea on August 25, and argued the plea in court on August 30; and on August 31, he took 6 hours to prepare for trial.

After carefully examining the record, we find no hint that counsel interviewed any of the witnesses other than Mike Perry, with whom he held a brief telephone conversation 2 weeks before trial. No attempt was made to confer with Jury's retained counsel, who had represented him at his arraignment. The general tenor of the record is that counsel made no substantial effort to research the law and the facts of the case until several days before the trial. This impression is made stronger by counsel's motions for continuance because of lack of preparation, and the number of issues raised on appeal which were not raised at trial.

Two days before trial, counsel sought a continuance in order to develop a defense of insanity which he stated had not become known to him until August 24, 1 week prior to trial. In support of his motion, he offered the affidavit of defendant Jury in which Jury stated that he suffered from "strong feelings of claustrophobia," and "a possible state of shock from being in an injury accident." There were no accompanying statements from family or friends who were familiar with Jury's history of claustrophobia. There were no affidavits or statements by persons medically qualified

who would have known of or could diagnose Jury's psychiatric problems. No attempt was made to secure statements from witnesses at the accident scene regarding Jury's condition at the time, and no effort was made to contact a Dr. Burden who Jury claims treated him 2 or 3 days after the accident. The motion was denied.

On the morning of trial, counsel again moved for a continuance. The ground this time was that he had been unable to secure the presence of two defense witnesses, Mike Perry and Laura Daarud, who he claimed were "necessary for our defense." Both were residents of Lewis County, and were the only two witnesses on defendant's list. It should be pointed out that this list was filed on August 31, only after the prosecutor made a motion to compel defendant to list his witnesses and state the general nature of his defense. A subpoena had been issued for Daarud on August 31, but service was not accomplished. No subpoena was issued for Perry. The colloquy between counsel and the trial court shows that Perry had been interviewed briefly some weeks before, but no effort had been made to determine whether he would appear as a witness. No effort had been made to interview Daarud.

Both trial counsel and the defendant plainly indicated to the trial court that the defense was unprepared for trial. At the hearing on the motion for continuance on the day of the trial, the defendant told the court, "I really feel that this is completely unprepared and totally unready to go to court." The defendant's mother, Mrs. Stallman, was also allowed to testify at the hearing. She stated:

> I'm not degrading [defense counsel's] capabilities, but I think he was under the impression that it was a misdemeanor at the time. . . . 'I don't see the seriousness of it,' he said, 'because there are only two charges, the malicious mischief and the second degree [sic] assault.' He said that should only take a couple of days to prepare, and then, if he recalls our conversation, I informed him that it was now a felony . . .

The motion for continuance was denied.

Counsel also raised his own unpreparedness as grounds in a motion for a new trial. At the hearing on this motion, defendant claimed to have three lay witnesses, all of whom could testify as to his physical and/or mental condition shortly before and after the accident. These witnesses, according to defendant, would have supported his testimony (1) that he had not consumed sufficient alcohol prior to the accident to produce intoxication, and (2) that his bizarre post–accident behavior was the result of shock, due to injuries received in the accident, as well as from claustrophobia. Defendant also asserted that Dr. Burden, who examined him several days after the accident, would have supported his contention that he suffered a concussion, dizziness, and nausea from the accident.

The motion for new trial was not supported by affidavits from any of the potential witnesses, but the following colloquy took place at that time.

[DEFENSE COUNSEL]: I have had discussions on one occasion with a Mr. Mike Perry, and he indicates he was a passenger in the defendant's car, and he was in the car prior to the incident, but they left shortly thereafter; returned for a period of five minutes and then left again. His testimony would have been concerning, perhaps, the state of shock but his time sequence should have been taken into account in that regard. . . . The second was a passenger in the car, the injured party by the name of Laurie Daarud, who was also subpoenaed and unable to be served. We understand that she has moved out of the county. We were unable to serve her as a result, and I have had no contacts with her.

THE COURT: But taking it at its best, the testimony would have been that there was some kind of shock, or whatever.

[DEFENSE COUNSEL]: That is correct. I have talked to a Dr. Burden, who the defendant had requested that we make contact with. He indicates that he had some prior discussions with the defendant, but did not treat the defendant for a state of shock. He indicated to me there was a period in which Mr. Jury was evidencing concern over dizziness and nausea, and that would have been his testimony. We have had no other contacts with any other

witnesses. It is my understanding that Mr. Jury has also had, at the time at which he was placed in the jail in Centralia City Jail, there was a contact with a third police officer whom we were unable to identify at the time.

Defendant mentioned a third witness who was at the scene, named "Kitty," who lived at the "Dodge Garage," who would have testified that defendant had a substantial "knot on the head as well as a bloody nose." Defense counsel did not locate or talk with this witness.

The right to assistance of counsel is contained in the sixth amendment to the United States Constitution and article 1, section 22 of the Washington Constitution. The United States Supreme Court has stated that the substance of this guaranty is that courts must make "effective" appointments of counsel. *Powell v. Alabama,* 287 U.S. 45, 77 L. Ed. 158, 53 S. Ct. 55, 84 A.L.R. 527 (1932). However, the court has never set explicit guidelines for determining what constitutes effectiveness. Instead, it has been left to each state to fashion its own standards.

■ For a time, our Washington courts held that counsel's representation was ineffective only if it made a farce or mockery of justice. *See, e.g., State v. Wilkinson,* 12 Wn. App. 522, 530 P.2d 340 (1975); *Fleetwood v. Rhay,* 7 Wn. App. 225, 498 P.2d 891 (1972); *State v. Keller,* 65 Wn.2d 907, 400 P.2d 370 (1965); *State v. Mode,* 57 Wn.2d 829, 360 P.2d 159 (1961). However, our Supreme Court now has devised the following test: After considering the entire record, can it be said that the accused was afforded an effective representation and a fair and impartial trial? *State v. Myers,* 86 Wn.2d 419, 424, 545 P.2d 538 (1976). *See State v. Gilmore,* 76 Wn.2d 293, 456 P.2d 344 (1969); *State v. Robinson,* 75 Wn.2d 230, 450 P.2d 180 (1969); *State v. Johnson,* 74 Wn.2d 567, 445 P.2d 726 (1968); *State v. Thomas,* 71 Wn.2d 470, 429 P.2d 231 (1967); *State v. Roberts,* 69 Wn.2d 921, 421 P.2d 1014 (1966); *State v. Rhodes,* 18 Wn. App. 191, 567 P.2d 249 (1977); *State v. Price,* 17 Wn. App. 247, 562 P.2d 256 (1977); *State v.*

*Haynes,* 16 Wn. App. 778, 559 P.2d 583 (1977); *State v. Darnell,* 14 Wn. App. 432, 542 P.2d 117 (1975). This test places a weighty burden on the defendant to prove two things: first, considering the entire record, that he was denied effective representation; and second, that he was prejudiced thereby.

Our initial inquiry, then, must be whether defendant Jury "was afforded an effective representation." Effective representation is not easily defined because the law is still in transition. It is clear that the departure from the "farce and mockery" standard is an attempt to more closely scrutinize trial counsel's performance. *State v. White,* 5 Wn. App. 283, 286–87, 487 P.2d 243 (1971), *rev'd on other grounds,* 81 Wn.2d 223, 500 P.2d 1242 (1972). *See also* Bazelon, *The Defective Assistance of Counsel,* 42 U. Cin. L. Rev. 1, 28–33 (1973). Under the "effective representation" standard, a defendant is entitled to reasonably competent assistance of counsel. *See People v. Steger,* 16 Cal. 3d 539, 546 P.2d 665, 128 Cal. Rptr. 161 (1976); *State v. Tucker,* 97 Idaho 4, 539 P.2d 556 (1975); *Rook v. Cupp,* 18 Ore. App. 608, 526 P.2d 605 (1974); *State v. Kahalewai,* 54 Hawaii 28, 501 P.2d 977 (1972); *State v. White, supra. See also* Annot., 26 A.L.R. Fed. 218 (1976); Steinberg, *The Disciplinary Rules and Competence of Counsel: A Proposed Alternative,* 11 Gonz. L. Rev. 133 (1975).

██ What is reasonably competent assistance of counsel will, of course, have to be developed on a case–by–case basis. *State v. Roberts, supra.* At the outset, it is presumed that court–appointed counsel is competent. *State v. Piche,* 71 Wn.2d 583, 591, 430 P.2d 522 (1967). This presumption can be overcome by showing, among other things, that counsel failed to conduct appropriate investigations, either factual or legal, to determine what matters of defense were available, or failed to allow himself enough time for reflection and preparation for trial. *State v. White, supra;* Comment, *Effective Representation—An Evasive Substantive Notion Masquerading As Procedure,* 39 Wash. L. Rev. 819 (1964); ABA Standards, The Defense Function § 4.1

(Approved draft, 1971). *See also United States v. DeCoster,* 487 F.2d 1197 (D.C. Cir. 1973); *Coles v. Peyton,* 389 F.2d 224 (4th Cir. 1968); *State v. Tucker, supra; State v. Harper,* 57 Wis. 2d 543, 205 N.W.2d 1 (1973).

The record before us clearly demonstrates that counsel made virtually no factual investigation of the events leading to defendant's arrest, nor did he properly support either his motion for continuance or motion for new trial with any affidavits. Counsel admits he was unprepared for trial and we agree.

Counsel is not expected to perform flawlessly or with the highest degree of skill. But he will be considered ineffective if his lack of preparation is so substantial that no reasonably competent attorney would have performed in such manner. *State v. White, supra.* In our opinion, the failure of counsel to adequately acquaint himself with the facts of the case by interviewing witnesses, failure to subpoena them, and failure to inform the court of the substance of their testimony, both at the time of argument on the motion for continuance and for a new trial, were omissions which no reasonably competent counsel would have committed.

Having ascertained that defendant was denied effective representation, we must determine whether the denial was prejudicial. *See* Comment, *Ineffective Assistance of Counsel: Who Bears The Burden of Proof?,* 29 Baylor L. Rev. 29 (1977). While some courts have placed the burden on the state to show absence of prejudice once the defendant produces evidence of ineffectiveness, *see, e.g., Cooper v. Fitzharris,* 551 F.2d 1162 (9th Cir. 1977); *United States v. DeCoster, supra,* our Supreme Court has stated that the burden is on the defendant to show actual prejudice. *State v. Myers, supra.* Prejudice can be determined only from weighing the entire record. For the reasons stated below, we believe that defendant received a fair trial and was not prejudiced by any lack of preparation or diligence of counsel on the charge of assaulting Officer Nelson. However, we believe defendant's lack of preparation of both the facts

and the law prevented defendant from receiving a fair trial on the count charging him with first–degree malicious mischief.

We are not inclined to rule that actual prejudice is shown solely because defense counsel neglected to interview and subpoena witnesses who might have helped the defense. There is only speculation from the record that these witnesses would have been helpful or would have offered testimony relevant to the defense.[1] Even though incompleteness of the record may be due to counsel's ineffectiveness, we cannot determine whether this incompleteness is actually prejudicial until we are credibly informed as to what the missing evidence is.[2]

Although we are unable to ascertain whether counsel's lack of preparation prejudiced defendant by depriving him of evidence that would have been helpful to his case, we must still consider whether defendant was prejudiced because counsel's lack of preparation caused him to overlook obvious legal issues and arguments at trial. *See Moore v. United States,* 432 F.2d 730, 735 (3d Cir. 1970).

One of the main purposes for requiring thorough pretrial preparation is that defendants themselves do not or cannot always supply essential facts—as in this case where defendant claimed amnesia. In many criminal cases, as here, the real issue is not whether the defendant performed the act

---

[1]This is not, however, a case where counsel's failure to call witnesses was a trial tactic. *See, e.g., State v. McGinley,* 18 Wn. App. 862, 573 P.2d 30 (1977); *State v. Wilkinson,* 12 Wn. App. 522, 530 P.2d 340 (1975); *State v. White,* 5 Wn. App. 283, 487 P.2d 243 (1971). In this case virtually no factual investigation pertinent to the charge of first–degree malicious mischief was made.

[2]There are two ways to break the vicious circle of an empty record created by ineffective counsel. First, evidence dehors the record can be submitted by affidavit on a motion for new trial. *See United States v. DeCoster,* 487 F.2d 1197 (D.C. Cir. 1973); CrR 7.6. Second, evidence dehors the record can be submitted in a personal restraint petition and hearing. RAP 16.3 *et seq.,* RCW 7.36; *cf. State v. White,* 81 Wn.2d 223, 226, 500 P.2d 1242 (1972) (the court implied that this was the proper procedure when it stated, "The decision of the trial court and the dissenting opinion of Williams, J., in the Court of Appeals [5 Wn. App. at 292] were correct.")

in question, but whether he had the requisite intent and capacity. This factor becomes more important where, as in this case, lesser degrees of the same offense involve different types of criminal intent. "The accused may not be aware of the significance of facts relevant to his intent in determining his criminal liability or responsibility." ABA Standards, The Defense Function § 4.1, commentary (Approved draft, 1971). And defense counsel also may not recognize the potential for advocating a lesser–degree verdict where he is not fully cognizant of the facts.

The record at trial clearly demonstrates that counsel's unpreparedness on the facts pertaining to malicious mischief caused him to totally ignore a real potential defense that because of "shock or claustrophobia,"[3] his client may not have been guilty of first–degree malicious mischief, but rather second or third degree. This is obvious from the record, for three reasons: (1) counsel took no exception to a clearly erroneous instruction concerning first–degree malicious mischief, (2) he did not propose an alternate instruction, and (3) he failed to urge in argument that the evidence concerning defendant's mental state warranted the jury in finding something less than first–degree malicious mischief. It is primarily on these grounds that we are persuaded that counsel's ineffectiveness resulted in actual prejudice, and that defendant did not receive a fair trial on this charge.

██ The jury was instructed appropriately in the statutory language on each of the three degrees of malicious mischief.

### Instruction No. 12

You are instructed that a person who *knowingly and maliciously causes an interruption or impairment of service* rendered to the public by physically damaging or tampering with an emergency vehicle or property of a political subdivision of the State of Washington is guilty of Malicious Mischief in the First Degree.

---

[3] Defendant did produce some evidence that he suffered from both shock and claustrophobia.

Instruction No. 13C

A person is guilty of Malicious Mischief in the Second Degree if he *knowingly and maliciously created a substantial risk of interruption or impairment of service* rendered to the public, by physically damaging or tampering with an emergency vehicle or property of the State or political subdivision thereof.

Instruction No. 13D

A person is guilty of Malicious Mischief in the Third Degree if he *knowingly and maliciously causes physical damage to the property of another.*

(Italics ours.) It is evident that the distinguishing feature in the three degrees of the crime relates to the state of mind required. For first–degree malicious mischief, the intent is directed toward interrupting public service; for second–degree malicious mischief, the intent is directed toward creating a substantial risk of interrupting public service; for third–degree malicious mischief, the defendant need only intend to cause the physical damage.

The error occurred when the court gave the important "elements" instruction. This instruction described the scienter or intent required for third–degree malicious mischief, when defining the elements for first–degree malicious mischief.

Instruction No. 5

To convict the defendant of the crime of Malicious Mischief in the First Degree charged in Count I of the Information herein, the State must prove to you beyond a reasonable doubt:

(1) That on or about July 17, 1976, the defendant did *knowingly and maliciously cause physical damage or tamper with an emergency vehicle* or property of the City of Centralia, Washington;

(2) That such damage or tampering caused an interruption or impairment of service rendered to the public.

(Italics ours.) The harm in this instruction was that it reduced the burden of proof of scienter for first–degree malicious mischief to the type of scienter required for third–degree malicious mischief. The evidence was at best ambiguous as to the reason for defendant's act of kicking

out the window of the police car. Giving the instruction in this form created an obvious injustice, *State v. Louie*, 68 Wn.2d 304, 413 P.2d 7 (1966), and the misstatement of the law is apparent and presumed to have misled the jury. *State v. Wanrow*, 88 Wn.2d 221, 559 P.2d 548 (1977).

This error and the failure of trial counsel to discover it and call it to the court's attention, his failure to propose a correct instruction, and to argue alternatively for conviction of a lesser degree of the charge, are further manifestations that counsel was not properly prepared on either the facts or law with reference to count 1, all to defendant's actual prejudice.

We are not suggesting, as counsel on appeal urges, that the evidence was insufficient to submit the issue of first–degree malicious mischief to the jury under proper instructions. The evidence, viewed in a light most favorable to the State, was sufficient to warrant a conviction on this charge. *State v. Randecker*, 79 Wn.2d 512, 487 P.2d 1295 (1971); *State v. Braxton*, 10 Wn. App. 1, 516 P.2d 771 (1973).

The State presented testimony that defendant used abusive language and struggled with police officers when he was arrested. After defendant was placed inside the patrol car, he continued to behave in a quarrelsome manner and was asked by the police to stop kicking at the car windows. Defendant subsequently lay on his back, lifted his feet, and kicked out the rear side window of the patrol car. We think this testimony constituted substantial evidence that defendant "knowingly and maliciously" caused an impairment of public services. We also believe testimony that the damaged car was taken out of service for 2 days was sufficient evidence of actual impairment of services. But we do think a properly instructed jury could as easily conclude on this same evidence that defendant was guilty of one of the lesser–included offenses.

What we have said concerning counsel's effectiveness in the defense of count 1 was not evident with respect to count 2. All witnesses to the assault incident testified at trial. The so–called missing witnesses would not have

materially supported any defense to this charge. Defendant's mental condition was not at issue. Defendant took the stand and had full recall of the incident. Defense counsel did an effective job of examining and cross–examining the witnesses on this charge, in taking exception to the instructions, and in arguing his client's theory to the jury. Defendant's theory that Officer Nelson provoked the assault was not accepted by the jury.

Counsel on appeal raises several issues with reference to third–degree assault. First, he challenges the sufficiency of the evidence, claiming that one who simply strikes an officer while in custody, without otherwise attempting to escape detention, is not guilty of third–degree assault. Officer Nelson testified that defendant struck him in the face as he tried to administer a Breathalyzer test. The incident occurred approximately 1 hour after defendant had been arrested.

RCW 9A.36.030 establishes a class C felony, where a person "shall assault another with intent to prevent or resist . . . lawful apprehension or detention . . ." The jury, upon special request during deliberation, were told in a supplemental instruction that "resisting detention implies that the subject is in custody and does or commits an act which tends to frustrate that custody." In another instruction, they were instructed that the State was required to prove that defendant "intended" to prevent or resist detention. Both instructions were agreed to by defense counsel.

While this statute has not been authoritatively construed in the context of an in–custody assault, we are of the opinion that these instructions properly carry out the purpose of the legislation, namely to prohibit assaultive behavior which interferes with the custodian's lawful obligations to insure a peaceful and orderly custody. Had the legislative purpose been to require an escape motive, there would have been no necessity for defining a separate crime of

attempted escape. RCW 9A.28.020. The State's case, construed according to *State v. Randecker, supra,* was sufficient to submit this issue to the jury.

■ Defendant also claims that it was error for the trial court to give the supplemental instruction without his personal presence in court. We disagree. CrR 3.4 states that "[t]he defendant shall be present at the arraignment, at every stage of the trial . . . except as otherwise provided by these rules . . ." CrR 6.15(f) provides:

**(f) Additional or Subsequent Instructions.**

(1) After retirement for deliberation, if the jury desires to be informed on any point of law, the judge may require the officer having them in charge to conduct them into court. Upon the jury being brought into court, the information requested, if given, shall be given in the presence of, or after notice to the parties *or their counsel.* Any additional instruction upon any point of law shall be given in writing.

(Italics ours.) The court in this case complied with CrR 6.15(f) and defense counsel was present. No oral communication was made to the jury, as in *State v. Wroth,* 15 Wash. 621, 47 P. 106 (1896), or *Linbeck v. State,* 1 Wash. 336, 25 P. 452 (1890).

As applied to the particular circumstances of this case, CrR 6.15(f)(1) does not violate the due process considerations raised in *Hopt v. People,* 110 U.S. 574, 28 L. Ed. 262, 4 S. Ct. 202 (1884). The defendant's presence is required only when it bears a reasonably substantial relation to the fullness of his opportunity to defend against the charge. *Snyder v. Massachusetts,* 291 U.S. 97, 78 L. Ed. 674, 54 S. Ct. 330, 90 A.L.R. 575 (1934). There is no suggestion that defendant's presence would have advanced his defense. His counsel's presence was sufficient under these particular circumstances.

We have considered all other issues raised by defendant, and find them to have no substantial merit.

Defendant's conviction on count 1 is reversed, and a new trial granted. Defendant's conviction on count 2 is affirmed.

PETRIE and REED, JJ., concur.

Reconsideration denied March 13, 1978.

Review denied by Supreme Court June 2, 1978.