[Nos. 17860-1-I; 19265-5-I. Division One. June 6, 1988.]

JAMES DORSEY, *Appellant,* v. KING COUNTY, *Respondent.*

*In the Matter of the Personal Restraint of* JAMES DORSEY, *Petitioner.*

*James S. Kempton,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Lynn S. Prunhuber, Deputy; Kenneth O. Eikenberry, Attorney General,* and *Mickey Brock, Assistant,* for respondent.

WEBSTER, J.—James Dorsey appeals the superior court's denial of his writ of habeas corpus which alleged ineffective assistance of counsel by a Washington attorney who had sponsored a California attorney pro hac vice. Consolidated with that appeal is a personal restraint petition alleging ineffective assistance of counsel by the California attorney

as well as newly discovered evidence. We affirm the trial court's decision on the writ of habeas corpus and dismiss the PRP.

## FACTS

On January 19 and 20, 1983, two women, Nancy Vasquez a/k/a Linda Camacho, and Darla Emmons a/k/a Kathy Lee Geary, used counterfeit VISA cards in order to obtain large cash advances from Kirkland area banks. The women were seen in the company of two males. Certain information led Washington authorities to believe that the four suspects were traveling with a baby on a PSA flight from Seattle to Burbank, California. This information was passed to the Burbank police who, at the flight's unloading gate in Burbank, stopped Emmons, Camacho, John Lewis, and Dorsey, who was holding a baby. On Dorsey's person was found an envelope containing the counterfeit VISA cards.

California attorney Alan Fenster represented both Dorsey and Emmons in a successful suppression hearing in the California courts. Later, in Washington, Dorsey and the others were charged with 14 counts of theft or attempted theft by credit card. All, except Dorsey, pleaded guilty; following a jury trial, Dorsey was found guilty and later sentenced to 10 years' imprisonment. In the Washington proceedings Dorsey was represented by Fenster pro hac vice. Fenster was sponsored by a Washington attorney, hereinafter local counsel, who also represented Dorsey's codefendant Emmons.

Dorsey unsuccessfully appealed his conviction on the ground that the evidence seized from him during his arrest in California should have been suppressed. *State v. Dorsey,* 40 Wn. App. 459, 698 P.2d 1109, *review denied,* 104 Wn.2d 1010 (1985). While the appeal was pending, Dorsey filed a PRP in this court, contending that affidavits submitted by himself and two of his codefendants, Linda Camacho and Darla Emmons, established that Dorsey had not been involved in the thefts. Our court dismissed the PRP on the

ground that the evidence could have been discovered before trial.

Subsequently, Dorsey filed a petition for a writ of habeas corpus in King County Superior Court alleging ineffective assistance of counsel from local counsel based on a conflict of interest. After the trial court denied that petition, Dorsey timely appealed to this court. Dorsey then filed a second PRP in our court, alleging newly discovered evidence and ineffective assistance of counsel by Fenster based on a failure to investigate the case. We consolidated the cases for review.

## A
### Facts Relevant to the Habeas Petition

The record reveals that on Dorsey's behalf local counsel appeared at Dorsey's omnibus hearing, signed and filed a suppression hearing memorandum, moved for a continuance of Dorsey's trial, and filed Dorsey's presentence report which described Dorsey as "an unwilling accessory after the fact". On Emmons' behalf, local counsel filed a presentence report which identified Dorsey as primarily responsible for the theft.

After introducing Fenster to the court at Dorsey's suppression hearing, local counsel advised the court that he would "be sitting in for [his] own interests but not assisting, as far as [he] knew." When trial began, the attorney identified himself as local counsel and obtained both the court's and Dorsey's permission to leave while Fenster conducted the trial.

Dorsey also submitted Emmons' affidavit in which she states that she wanted to testify for Dorsey to the effect that he was innocent of the charges, but that she finally refused to do so because of advice from her attorney that such testimony would affect her adversely at sentencing. The State submitted a report from Emmons' probation officer, letters from Emmons' relatives, and the verbatim report of proceedings from codefendant Camacho's sentencing which tended to show that the statements in

Emmons' affidavit were false and that Dorsey had in fact planned the crimes.

At the hearing on the habeas petition, Dorsey was represented by attorney Howard Goodfriend. Both Dorsey and the State agreed that the petition could be determined without local counsel's testimony. The trial court denied the petition, essentially finding that while he performed some actions on Dorsey's behalf, local counsel did not actively represent Dorsey.

## B
### Facts Relevant to the PRP

Dorsey's affidavit in support of his PRP alleges that his repeated attempts to discuss the facts of the case with Fenster were unsuccessful. He further alleges that Fenster did not conduct an adequate investigation, neglected to interview and subpoena witnesses who could have helped the defense, and generally made no effort to develop a defense for him.

Dorsey has also submitted Fenster's affidavit. In that affidavit, Fenster states that he believed it unnecessary to discuss with Dorsey either the facts of the case or alternate defenses because Fenster felt so strongly that the evidence would be suppressed. He further states that he did not interview any witnesses or seek to develop exculpatory testimony.

The affidavit and medical records of Dr. Scott Onada have also been submitted in support of the PRP. Onada is a chiropractor practicing in California. He avers that he saw Dorsey for a back problem on the morning of January 20, 1983, from 10 a.m. until noon in California.

### STANDARD OF REVIEW
#### A
#### Habeas Petition Appeal

The Superior Court's decision to deny Dorsey's habeas petition is subject to review in the same manner as any other trial court decision: whether the findings are supported by substantial evidence and whether those findings

support the conclusions of law. *See Davis v. Rhay,* 68 Wn.2d 496, 498, 413 P.2d 654 (1966). *Cf.* RAP 16.14(b) (review of trial court decision on PRP).

Ordinarily, one raising error in a habeas petition bears the burden of establishing that, more likely than not, he has sustained actual prejudice stemming from constitutional error. *In re Hews,* 99 Wn.2d 80, 87–88, 660 P.2d 263 (1983); *In re Hagler,* 97 Wn.2d 818, 826, 650 P.2d 1103 (1982), *cert. denied,* 92 L. Ed. 2d 739 (1986). However, when, as here, the error claimed is ineffective assistance of counsel based on a conflict of interest, then proof of the error gives rise to a conclusive presumption of prejudice and an independent showing of prejudice is unnecessary. *In re Richardson,* 100 Wn.2d 669, 679, 675 P.2d 209 (1983). Thus, Dorsey need only show either (1) that the trial court knew or reasonably should have known of a particular conflict into which it failed to inquire, or (2) that an actual conflict of interest adversely affected his lawyer's performance. *In re Richardson,* at 677.

## B
## PRP

Because the PRP involves a collateral review, Dorsey bears the burden of establishing, more likely than not, that he was actually prejudiced by the claimed error. *In re Hews,* at 89; *In re Hagler,* at 826. In evaluating a PRP, the reviewing court has three options:

1. If a petitioner fails to meet the threshold burden of showing actual prejudice arising from constitutional error, the petition must be dismissed;

2. If a petitioner makes at least a prima facie showing of actual prejudice, but the merits of the contentions cannot be determined solely on the record, the court should remand the petition for a full hearing on the merits or for a reference hearing pursuant to RAP 16.11(a) and RAP 16.12;

3. If the court is convinced a petitioner has proven actual prejudicial error, the court should grant the Personal Restraint Petition without remanding the cause for further hearing.

*In re Hews,* at 88.

### HABEAS PETITION

The threshold question presented in our review of the habeas petition is whether the Admission to Practice Rules created an attorney–client relationship between local counsel and Dorsey.

Former APR 7, now APR 8(b), provided that:

**A. In General.**

(1) No person shall appear as attorney or counsel in any of the courts of this state, unless he is an active member of the state bar: Provided, that a member in good standing of the bar of any other state who is a resident of and who maintains a practice in such other state may, with permission of the court, appear as counsel in the trial of an action or proceeding in association only with an active member of the state bar, who shall be the attorney of record therein and responsible for the conduct thereof and shall be present at all court proceedings.

. . .

(3) No member of the state bar shall lend his name for the purpose of, or in any way assist in, avoiding the effect of this rule.

Washington cases do not address the responsibilities of local counsel under APR 7; cases construing the rule have instead focused on the status of the out–of–state attorney. *See, e.g., Hahn v. Boeing Co.,* 95 Wn.2d 28, 621 P.2d 1263, 20 A.L.R.4th 846 (1980). In dicta the *Hahn* court noted that the association of local counsel is designed to secure for the court reasonable assurance that local rules of practice and procedure will be followed. *Hahn,* at 34.

The plain language of the rule suggests that the duties of local counsel are to "associate" with out–of–state counsel; to be the "attorney of record" and "responsible for the conduct" of the proceedings; to be present for all court proceedings and to avoid "lending" his name for the purpose of avoiding the effect of the rule. If, as *Hahn* suggests, the purpose of the rule is to assure that local practice and procedure is followed, and as the rule expressly provides, the responsibility for the conduct of the proceedings lies

with local counsel, then it follows that the local association rule creates an attorney–client relationship between the local attorney and the client.

The State argues that if the local association rule created an attorney–client relationship between Dorsey and local counsel, Dorsey waived his right to local counsel's presence and representation in a colloquy that took place between the court and Dorsey on the day of trial.[1] However, we conclude from our review of that exchange that Dorsey waived the attorney's presence only.

Having decided that APR 7 created an attorney–client relationship, we nonetheless hold that Dorsey's claim fails on the ground that the role played by local counsel in Dorsey's defense was de minimus and the conflict of interest merely technical.

An attorney "actively represents" a defendant when he enters an appearance on behalf of a criminal defendant, consults with him confidentially for the purpose of preparing a defense, investigates his case, aids in the pretrial

---

[1]On the day of trial, local counsel introduced Fenster to the court and requested permission to leave the courtroom during the rest of the trial. The prosecutor then stated:

"[PROSECUTOR]: Before we conclude the record, I would like the record to reflect this is upon Mr. Dorsey's own acknowledgement that he does have a right to have Washington counsel present if he wishes to do so. He wishes to waive [local counsel's] presence and proceed with Mr. Fenster as counsel.

"THE COURT: Very well, Mr. Dorsey. You have heard what the deputy prosecuting attorney . . . just indicated. Is that statement true and correct?

"DEFENDANT DORSEY: Yes.

"THE COURT: You understand you have the right to be represented by a lawyer from the State of Washington?

"DEFENDANT DORSEY: Yes.

"THE COURT: You wish to have Mr. Fenster represent you, is that correct?

"DEFENDANT DORSEY: Yes, that is correct.

". . .

"THE COURT: You recognize you could, if you wish, have both [local counsel] and Mr. Fenster here constantly?

"DEFENDANT DORSEY: Yeah.

"THE COURT: You are satisfied that to have [local counsel] here and if he wishes to leave, he can leave?

"DEFENDANT DORSEY: Yes.

"THE COURT: Very well. Thank you, sir. You may be seated."

preparation of his defense, appears at his trial, participates in the selection of the jury that is to decide his fate, argues motions and objections, confers with co–counsel on trial strategy, offers the defendant legal advice, including advice on whether he should testify or present evidence in his defense, and argues the issue of penalty, a matter of life and death, to the jury on the defendant's behalf must be said to represent that defendant and owe to him all the duties an attorney owes to a client in a criminal case.

*United States ex rel. Sullivan v. Cuyler,* 593 F.2d 512, 519 (3d Cir. 1979). The case at bar is much weaker than the case presented in *Cuyler.* Here, the record shows that on Dorsey's behalf local counsel entered an appearance at an omnibus hearing, signed and filed a suppression memorandum, moved for a continuance, and submitted a presentence report. The attorney did not participate in the trial, other than to introduce Fenster to the court, or at sentencing.

Dorsey's main complaint with the findings made by the trial court is the negative inferences drawn by the court from the absence of any evidence on what role local counsel played "behind the scenes" on Dorsey's defense.[2] Yet, Dorsey agreed that his petition could be heard without local counsel's testimony. Dorsey should not be heard to complain about the inferences drawn when he, as the petitioner in a habeas corpus proceeding, had the burden of proof and failed to meet it. *In re Hagler,* at 826.

■ A trial court commits reversible error if it knows or reasonably should know of a particular conflict of interest into which it fails to inquire. Reversal is also necessary when the defendant shows an actual conflict of interest adversely affecting his lawyer's performance. In neither situation need prejudice be shown. *In re Richardson,* at 677.

We first address Dorsey's argument that the prosecutor knew of a conflict and that the failure of the prosecutor to

---

[2]While we need not consider Dorsey's latest affidavit on review because it was not before the trial court, the affidavit does not dissuade us from the conclusion that local counsel's role in Dorsey's representation was minimal.

bring it to the attention of the court should result in a reversal no less than if the trial court had failed to inquire into a perceived conflict. This argument was not made to the trial court on the habeas petition. Therefore, we will not consider it on review. RAP 2.5(a).

The question then becomes whether Dorsey can show an actual conflict of interest adversely affecting his attorney's performance. An actual conflict of interest exists when an attorney must represent adverse interests. *State v. Nielson*, 29 Wn. App. 451, 454, 629 P.2d 1333 (1981). The interests are sufficiently adverse if it is shown that the attorney owes a duty to the defendant to take some action that could be detrimental to his other client. *Nielson*, at 454. In *State v. Alexis*, 21 Wn. App. 161, 584 P.2d 963 (1978), defense counsel represented two codefendants in a joint trial. The appellate court determined that one reason the defense counsel had an actual conflict of interest was that the defense available for one defendant was that the other was responsible. This situation put counsel in the position of trying to defend both while implicating one as the principal wrongdoer. *Alexis*, at 166.

Dorsey argues that like counsel in *Alexis*, local counsel has argued inconsistent positions. Dorsey directs our attention to Emmons' presentence report, where local counsel argued that Dorsey was primarily responsible for the thefts, and to Dorsey's presentence report, where Dorsey was described as only an unwilling accessory after the fact. As further evidence that an actual conflict of interest existed, Dorsey reminds us that local counsel dissuaded Emmons from providing exculpatory evidence for Dorsey, to Emmons' advantage on sentencing and Dorsey's disadvantage at trial.

We are not convinced by these arguments because Dorsey has not shown how the conflict of interest *adversely* affected local counsel's performance. At trial the decision made not to call Emmons was purely tactical and, no doubt, a sound one given the State's potential to impeach her testimony. Similarly, whatever technical conflict of

interest existed did not adversely affect local counsel's performance at Dorsey's sentencing. In fact, the only part the attorney played at sentencing was to submit the presentence report which describes Dorsey favorably. Fenster actually argued Dorsey's case.

PERSONAL RESTRAINT PETITION

The issue presented in our review of the PRP is whether Dorsey has made a prima facie showing of actual prejudice regarding his claim of ineffective assistance of counsel by Fenster and of newly discovered evidence. Dorsey claims that Fenster failed to investigate his case thus providing Dorsey with ineffective assistance of counsel. The standard of review for a claim of ineffective assistance of counsel involves a 2–prong test. *Strickland v. Washington,* 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984); *State v. Jeffries,* 105 Wn.2d 398, 418, 717 P.2d 722, *cert. denied,* 93 L. Ed. 2d 301 (1986). First, the defendant must show that counsel's performance was deficient. *Strickland,* at 687–88. This showing is made by demonstrating that counsel's representation fell below an objective standard of reasonableness. *Strickland,* at 688.

Second, the defendant must show that counsel's deficient performance prejudiced the defendant. This showing is made when there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. The court specified that a reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland,* at 694.

The presumption of counsel's competence can be overcome by a showing that counsel failed to conduct an appropriate investigation, either factual or legal, to determine what matters of defense were available. *State v. Jury,* 19 Wn. App. 256, 263, 576 P.2d 1302, *review denied,* 90 Wn.2d 1006 (1978). In *Jury,* the court determined that counsel's performance was deficient because he made virtually no factual investigation of the events leading to the defendant's arrest, had not adequately interviewed witnesses,

failed to subpoena them, and failed to inform the court of the substance of their testimony at either a motion for a continuance or for a new trial. *Jury,* at 264. In *State v. Byrd,* 30 Wn. App. 794, 638 P.2d 601 (1981), the defendant in a PRP alleged that he gave defense counsel the name of the key witness on the consent issue in a rape case and that counsel failed to interview and present him at trial. The court remanded the PRP for a hearing on whether the allegations were true. *Byrd,* at 799–800.

The State alleges that, in this case, Fenster's decision to not investigate anything other than the suppression issues was a reasonable tactical choice as well as an effort to avoid offering perjured testimony later. The decision not to call a witness is generally a matter of trial tactics and will not support a claim of ineffectiveness of counsel.[3] *Byrd,* at 799. However we conclude that under *Jury* and *Byrd,* Dorsey has made out a prima facie case on the performance prong of *Strickland.* Fenster admits that he made no factual investigation of the case and did not attempt to interview witnesses with a view to providing Dorsey with an alibi defense.

As for the prejudice prong of the *Strickland* test, Dorsey argues that the outcome of the trial would likely have been different if Emmons had testified favorably for him given that only circumstantial evidence supported the conviction. We disagree. Emmons was Dorsey's girl friend and mother of his child; she would probably be viewed by the jury as untrustworthy. Moreover, it appears that Emmons was not telling the truth in her affidavit and any exculpatory testimony she offered would be impeached by witnesses called by the State. Therefore, Dorsey has not met his burden on the prejudice prong of the test.

---

[3]Dorsey's complaint that he was not called as a witness is without merit because he admits that the decision to testify was made by him after conferring with Fenster. Although a criminal defendant has the right to testify in his own behalf, if the defendant accepts counsel's advice against testifying, then defendant cannot later allege ineffective assistance of counsel. *State v. King,* 24 Wn. App. 495, 499, 601 P.2d 982 (1979).

As for the newly discovered evidence presented in the affidavit of Dr. Scott Onada, we hold that the evidence could have been discovered before trial. *State v. Davis*, 25 Wn. App. 134, 138, 605 P.2d 359 (1980).

Based on the foregoing analysis, we dismiss the personal restraint petition and affirm the trial court's decision on the habeas petition.

SCHOLFIELD, C.J., and SWANSON, J., concur.

Review denied by Supreme Court November 1, 1988.