983 P.2d 617 (1999)
139 Wash.2d 37
The STATE of Washington, Respondent,
v.
Monte Clair WEST, Petitioner.
No. 67373-0.
Supreme Court of Washington, En Banc.
Argued June 15, 1999.
Decided September 9, 1999.
*619 Brian Coughenour, Port Angeles, for Petitioner.
Christopher Shea, Clallam County Prosecutor, Synthia Szeker, Deputy, Port Angeles, for Respondent.
*618 DURHAM, J.
Monte West challenges his conviction for second degree assault. West argues that the trial court abused its discretion in failing to order a new trial based on his claim of ineffective assistance of counsel. We affirm, upholding the trial court's conclusion that there was not a reasonable probability that the attorney's error affected the outcome of the trial.

FACTS
In 1990, the State charged West with second degree assault after West allegedly beat up his friend, Winifred Luvaas. At West's trial, Luvaas testified that she and West had been drinking together in a trailer park. According to Luvaas, she and West each had consumed a fifth of whiskey. The two began to quarrel and Luvaas struck West. West then knocked her down and proceeded to pummel and kick her in the face with his cowboy boots until she lost consciousness.
Sharon Lester testified that Luvaas arrived at Lester's home the next morning "beat up real bad." Report of Proceedings (RP) (Oct. 10, 1990) at 41. According to Lester's testimony, Luvaas was too afraid to go to the doctor or to the police, but Lester insisted that Luvaas seek medical help and drove her to the doctor. Dr. Redlin, the physician who treated Luvaas, also testified at trial. Although Luvaas initially told him that she had been in a car accident, upon examining Luvaas Dr. Redlin ascertained that her injuries were caused by repeated blows from a blunt object. Believing Luvaas' injuries to be life threatening, Dr. Redlin called the police. The investigating officer testified that Luvaas' injuries were the most severe he had seen in his five years of duty. The State submitted as evidence five photographs of Luvaas' bruised face, arms, side and back.
West rested without calling any witnesses in his defense. West's theory of the case, developed through cross-examination of Luvaas and during closing arguments, focused on his and Luvaas' consumption of alcohol. The defense essentially argued that West and Luvaas had consumed so much whiskey together that Luvaas was not a reliable witness, and that West was too intoxicated to form the intent to assault. West's attorney concluded her closing arguments by stating that "my client did not knowingly or intentionally assault Mrs. Luvaas. He was just too drunk." RP (Dec. 21, 1990) at 22.
West did not testify. His attorney made it clear on the record that West wished to testify in his own defense, but chose not to out of fear that his prior convictions for murdering his estranged wife and assaulting his child's babysitter would be admitted for impeachment purposes. West's attorney failed to make a motion in limine to have these convictions excluded under State v. Alexis, 95 Wash.2d 15, 621 P.2d 1269 (1980).[1] The jury found West guilty of second degree assault and he appealed.
On appeal, West argued that he was deprived of his right to effective assistance of counsel because his attorney failed to make a motion in limine to exclude West's prior convictions. West asserted that had his attorney *620 made such a motion, it would have been granted and he would have then testified on his own behalf. The Court of Appeals determined that West's counsel should have moved to exclude his prior convictions, but remanded the case to the superior court for a determination of whether those convictions would have been admissible under the Alexis balancing test. The court further instructed that if the lower court found the convictions to be inadmissible, it should hear West's proposed testimony and determine whether that testimony "creates a reasonable probability that the result of the trial would have been different had the jury been allowed to hear the testimony." State v. West, No. 14609-6-II, slip op. at 7-8, 81 Wash.App. 1005 (Apr. 5, 1996).
Superior Court Judge Roper presided over the hearing on remand.[2] At the hearing, West made an offer of proof regarding his proposed testimony so that Judge Roper could determine whether there was a reasonable probability that it would have affected the outcome of the trial. The offer of proof was as follows:
Q ... On the evening of June 30th or the morning after that, did you hit Winifred Luvaas?
A. No, I did not.
Q. Did you kick her?
A. I did not.
Q. Did you do anything to her similar to that, slap her, push her, trip her or anything like that?
A. I did not.
Q. Thank you.
RP (Aug. 1, 1996) at 16.
The State's cross-examination further fleshed out West's version of events. West stated that he had seen Luvaas that night but had not been drinking with her. He testified that he saw her fall twice, once on her face on a concrete patio and once onto a wheelbarrow. According to West, he left Luvaas sleeping in a mobile home and next saw her in court after she had accused him of assault.
Judge Roper considered this testimony against the backdrop of evidence presented at West's trial, including the testimony of Luvaas, Dr. Redlin, Lester, the investigating officer, and the five exhibits. Judge Roper ruled that West's testimony, in light of this other evidence, was not credible and would not have been believed by a jury. Accordingly, Judge Roper held that there was not a reasonable probability that West's testimony would have changed the jury's verdict, and denied West's motion for a new trial.
West appealed, arguing that the trial court abused its discretion in concluding that West's testimony was not credible and there was not a reasonable probability that a jury would have acquitted West had he testified at his trial. The Commissioner of the Court of Appeals concluded that Judge Roper did not abuse his discretion and affirmed West's conviction. This court granted West's petition for discretionary review.

ANALYSIS
Washington courts analyze claims of ineffective assistance of counsel under the two prong test enunciated in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove that he was denied his right to effective assistance of counsel, a defendant must demonstrate both that the trial counsel's conduct fell below a minimum objective standard of reasonable attorney conduct and that the deficient performance prejudiced him. State v. Benn, 120 Wash.2d 631, 663, 845 P.2d 289, cert. denied, 510 U.S. 944, 114 S.Ct. 382, 126 L.Ed.2d 331 (1993). The prejudice prong of this test requires the defendant to show a reasonable probability that, but for his counsel's errors, the result of the proceeding would have been different. State v. Lord, 117 Wash.2d 829, 883-84, 822 P.2d 177 (1991), cert. denied, 506 U.S. 856, 113 S.Ct. 164, 121 L.Ed.2d 112 (1992). This prejudice prong must be met even when a defendant asserts that his counsel's error prevented the defendant from testifying on his own behalf. State v. Robinson, 138 Wash.2d 753, 982 P.2d 590 (1999). The decision to grant or deny a new trial based on a claim of ineffective assistance of counsel *621 will not be disturbed absent a manifest abuse of discretion. State v. Jackman, 113 Wash.2d 772, 777, 783 P.2d 580 (1989).
At issue in this case is whether a judge, in applying the prejudice prong of the Strickland test, may evaluate the credibility of the evidence offered by the defendant, or whether the court must grant a new trial if the defendant presents any evidence or testimony indicating his innocence.
West asserts that Judge Roper usurped the jury's prerogative when he ruled on the credibility of West's proposed testimony. West contends that when a case is on remand for a determination of prejudice under Strickland, the judge may not assess the credibility and plausibility of the proffered evidence. According to West, the judge's role is to determine whether the evidence could conceivably exculpate the defendant. If the evidence supports the defendant's theory of the case, the court must grant the defendant a new trial. West suggests that a new trial should be denied only where the evidence proffered by the defendant is not exculpatory. However, "if the defendant testifies that he did not commit the act and [if] his testimony would be contrary to the testimony of the complaining witness, then [the] prejudice burden has been met." Pet. for Review at 9.
Washington case law belies West's assertion that a judge may not assess witness credibility and reliability during an evidentiary hearing. When faced with the decision of whether to grant a new trial based on newly discovered evidence or recantation of trial testimony, the trial judge, not the jury, must assess the credibility of the proffered testimony. See, e.g., State v. Macon, 128 Wash.2d 784, 801, 911 P.2d 1004 (1996) (trial court must determine whether a witness's recantation is reliable); State v. Rolax, 84 Wash.2d 836, 838, 529 P.2d 1078 (1974) (remanding to the trial court for a finding of whether recanted testimony was perjured and whether the testimony affected the jury's determination of guilt), overruled on other grounds by Wright v. Morris, 85 Wash.2d 899, 540 P.2d 893 (1975); State v. Peele, 67 Wash.2d 724, 731, 409 P.2d 663 (1966) (refusing to grant new trial based on trial court's determination that codefendant's testimony exculpating the defendant was not credible and unlikely to be believed by jury); State v. Ieng, 87 Wash.App. 873, 880, 942 P.2d 1091 (1997) (holding that the trial court, not the jury, must assess credibility in all cases where a witness recants his trial testimony); State v. Castro, 32 Wash.App. 559, 648 P.2d 485 (1982) (trial court did not abuse its discretion in ruling that witness statement did not have high probability of trustworthiness); State v. Goforth, 33 Wash.App. 405, 409, 655 P.2d 714 (1982) (in passing on whether newly discovered evidence will probably result in a different outcome upon retrial, the trial court must necessarily pass upon the credibility, significance, and cogency of the proffered evidence).
The above cases show that, although it is the province of the jury to determine a witness's credibility at trial, the trial court may rule on credibility in some contexts. The trial judge serves an important gatekeeper function in assessing whether the evidence presented at a remand hearing entitles the defendant to a new trial. The Court of Appeals in State v. Maurice, 79 Wash.App. 544, 903 P.2d 514 (1995) and Dorsey v. King County, 51 Wash.App. 664, 754 P.2d 1255 (1988) specifically recognized the importance of the court's role in evaluating the credibility and reliability of evidence at a hearing to determine whether the defendant was prejudiced under Strickland. In Dorsey, Division One examined whether the petitioner made a sufficient showing of prejudice to support his claim that his counsel was ineffective for failing to call several witnesses at trial. Dorsey, 51 Wash.App. at 675, 754 P.2d 1255. In rejecting the defendant's claim, the court found that the defendant was not prejudiced because copious evidence presented at trial supported his guilt. In addition, the court stated that one of the witnesses proffered by the petitioner "would probably be viewed by the jury as untrustworthy" and that "it appears that [the other witness] was not telling the truth in her affidavit." Dorsey, 51 Wash. App. at 675, 754 P.2d 1255. Maurice also involved a defendant who argued that his counsel was ineffective for failing to call a witness. Division Three remanded the case *622 to allow the superior court to determine the veracity of the affidavit submitted by the proposed witness and whether there was a reasonable probability that, had the witness been called, the outcome of the trial would have been different. Maurice, 79 Wash.App. at 552, 903 P.2d 514.
Our unanimous decision in State v. Hendrickson, 129 Wash.2d 61, 917 P.2d 563 (1996) is also instructive. Hendrickson was charged with delivery of a controlled substance. At trial, Hendrickson took the stand in his own defense and testified that he was innocent. The State introduced into evidence Hendrickson's two previous drug convictions. Although this court found that the failure of Hendrickson's trial counsel to object to the admission of these convictions fell below acceptable standards, we held that any injury to Hendrickson's credibility in the eyes of the jury was immaterial in light of the other overwhelming evidence against him. Hendrickson, 129 Wash.2d at 80, 917 P.2d 563. Essentially, the court concluded that, in light of the other evidence against him, Hendrickson was not a credible witness and would not have been believed by the jury irrespective of the wrongfully admitted convictions. We thus held that Hendrickson was not prejudiced under Strickland by his attorney's error.
As stated above, Strickland requires the court to assess the probable impact the attorney's error may have had on a jury's verdict. In doing so, the court must weigh the evidence proffered at the evidentiary hearing against the evidence put forward during trial. This analysis necessarily requires the court to judge the credibility of the new evidence to determine what effect it might have had at trial. If we were to hold, as West argues we should, that a new trial should be granted whenever a witness at the hearing testifies to facts inconsistent with the defendant's guilt, we would eviscerate the need for the evidentiary hearing provided for in Strickland.
In Lawrence v. Armontrout, 31 F.3d 662 (8th Cir.1994) the Eighth Circuit Court of Appeals addressed claims identical to those now made by West. In that case, a defendant's attorney failed to interview and call several witnesses that, if believed, would have established the defendant's alibi defense. The lower court found that the defendant was not prejudiced by this error because the alibi witnesses were not credible. The defendant appealed, arguing that the issue of credibility must necessarily go to a jury. In affirming the dismissal of the defendant's claim, the court explained that the trial court's role in determining credibility was crucial to the two prong Strickland analysis. According to the court, the defendant's approach would
require ... relief in such instances regardless of the strength of the evidence supporting the petitioner's conviction. Such an interpretation runs counter to Strickland's express statement that prejudice exists only when there "is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."
Lawrence, 31 F.3d at 667 (quoting Strickland, 466 U.S. at 687, 104 S.Ct. 2052).
The ineffective assistance of counsel standard set forth in Strickland v. Washington allows a judge to grant a new trial only where the defendant has shown that there is a reasonably probability that, absent his counsel's errors, the outcome of the trial would have been different. The court's role in determining whether the prejudice prong under Strickland is met requires more than a determination of whether the evidence is exculpatory. Rather, the court must weigh the defendant's proposed testimony against the evidence presented at trial to ascertain whether, in light of that evidence, the defendant's testimony is credible. As the court in Strickland explained:
It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding.
Strickland 466 U.S. at 693, 104 S.Ct. 2052 (citation omitted). West's argument that any issue of credibility must necessarily go to the *623 jury undermines Strickland's requirement that the defendant show that he was prejudiced.
In this case, we hold that Judge Roper did not abuse his discretion by concluding that there was not a reasonable probability that West's testimony would have affected the outcome of the trial. When a judge determines the credibility of a witness on remand pursuant to an ineffective assistance of counsel claim or a motion for a new trial, the judge looks to the strength of the countervailing evidence, the plausibility of the witness's statements and the existence of evidence corroborating those statements. See, e.g., State v. Peele, 67 Wash.2d 724, 731, 409 P.2d 663 (1966); State v. Maurice, 79 Wash.App. 544, 903 P.2d 514 (1995); Dorsey v. King County, 51 Wash.App. 664, 754 P.2d 1255 (1988).
Judge Roper properly found West's version of events implausible in light of the complete trial record.[3] At the hearing, West stated that he had seen the victim fall onto a concrete patio and onto a wheelbarrow. At trial, Dr. Redlin testified that Luvaas had multiple bruises on the left side of her body, extending from her head to her lower legs. In explaining the etiology of Luvaas' injuries, Dr. Redlin testified that it appeared as if "she had been a victim of some sort of fight, or some blows ... either by blunt object or fists or feet." RP (Oct. 29, 1990) at 28. The doctor's opinion was supported by five photographs of Luvaas showing bruising around her face and left side of her body. This evidence was consistent with Luvaas' testimony that she sustained her injuries when West kicked her with his cowboy boots.
West's denial of the assault was not corroborated by any evidence presented at the hearing or at his trial. In fact, West's assertions on remand were flatly contradicted by the intoxication defense he proffered at trial. At the hearing, West stated that he had never hit Luvaas. He testified that he did not drink with her and last saw her sleeping. However, at trial, the defense elicited and relied on testimony that West and the victim had fought with each other, and that they had both drunk so much they were too intoxicated to be aware of their actions. In her closing arguments, West's attorney explained to the jury:
I submit to you that my client was so intoxicated he was unable to know what he was doing was a crime. Two of them were arguing and arguing and they started fighting. Mrs. Luvaas said she threw the first punch or she hit him first....
. . . .
I submit to you that because of the level of intoxication on both of these people, neither one of them really knew what was going on and neither one of them really knowingly participated in this, and my client did not knowingly or intentionally assault Mrs. Luvaas. He was just too drunk.
RP (Dec. 21, 1990) at 21-22. Given these inconsistencies, Judge Roper properly found West's testimony to lack credibility and would not have been believed by a jury.

CONCLUSION
Judge Roper did not abuse his discretion by ruling on West's credibility. After weighing the testimony proffered by West at the hearing against the testimony and evidence presented at trial, Judge Roper properly ruled that West's testimony was not credible and thus would not have affected the outcome of the trial. Because West could not show that he was prejudiced by his inability to testify at trial, his ineffective assistance of counsel claim must fail. Accordingly, we affirm West's conviction.
GUY, C.J., SMITH, TALMADGE and IRELAND, JJ., concur.
*624 ALEXANDER, J. (dissenting).
I dissent. In doing so, I note first that the decision that the majority reaches appears to be inconsistent with a prior decision of this court. The case that I refer to is State v. Hill, 83 Wash.2d 558, 520 P.2d 618 (1974).
Hill is markedly similar in fact and law to the instant. There the trial judge had ruled that two prior convictions could be used to impeach the credibility of the defendant if he chose to testify, even though those convictions were inadmissible. The defendant did not testify, choosing not to risk the "potentially devastating effect" of these convictions upon "his prospective cross-examination." Hill, 83 Wash.2d at 563, 520 P.2d 618. As a result, we found that the defendant was "deprived... of a free and voluntary choice in the matter and literally compelled ... to remain silent." Hill, 83 Wash.2d at 565, 520 P.2d 618. Here, the defendant, West, was also faced with the prospect of being impeached by inadmissible convictions, and but for his attorney's ineffective counsel he would have been free to testify absent that threat.[1] In Hill, we did not, as was done by the Court of Appeals in the present case, remand to the trial court for it to examine the error under a harmless error standard, and assess whether the defendant's testimony would have been believable and reasonably led to a different verdict than a guilty one. We wrote that "[i]t is no answer to say that the procedure followed in the trial court was inadequate and the record insufficient to show prejudice." Hill, 83 Wash.2d at 565, 520 P.2d 618. Instead, we readily conceded that the defendant's testimony "may or may not have influenced the jury in arriving at a verdict." Hill, 83 Wash.2d at 565, 520 P.2d 618 (emphasis added).
In Hill, we described the right to testify as follows:
In our state, the framers of our constitution seemingly were not content to leave the preservation of the right to testify in one's own behalf up to the legislature, for, after providing in article 1, section 9, that an accused could not be compelled to give evidence against himself, they went on in article 1, section 22  now amendment 10  and provided:
In criminal prosecutions the accused shall have the right ... to testify in his own behalf, ...
Hill, 83 Wash.2d at 564, 520 P.2d 618. We went on to add that "[t]he right to testify in one's own behalf if exercised, of course, amounts to a waiver of the right to remain silent, and the free and voluntary election so to do, or not to do, should be unfettered and unhindered by any form of compulsion." Hill, 83 Wash.2d at 564, 520 P.2d 618 (emphasis added).
I am aware that the majority recently limited the application of Hill to cases where the trial court prevents the defendant from testifying: "Hill is distinguishable because it involved wrongful actions by a court that resulted in a deprivation of the defendant's right to testify. In contrast to the defendant in Hill, Robinson's right to testify was abridged, not by the court, but by actions of his defense counsel." State v. Robinson, 982 P.2d 590 (Wash.1999). While I continue to believe that Robinson was wrongly decided, I must respect it as precedent.
*625 Unfortunately, having eliminated the factually-similar Hill from consideration, the majority is left with inapposite cases to support its position. It cites a number of cases wherein a witness recanted testimony given at trial for the proposition that trial judges are allowed to assess the credibility of a defendant's testimony that was never given. See Majority op. at 7-8. However, "[r]ecantation testimony is inherently questionable." State v. Macon, 128 Wash.2d 784, 801, 911 P.2d 1004 (1996). We have noted that "[t]he untrustworthy character of recanting testimony is well known by those experienced in the trial of criminal cases, and when such testimony is offered, it calls for rigid scrutiny." State v. Wynn, 178 Wash. 287, 289, 34 P.2d 900 (1934). These cases involved defendants who were "convicted solely upon the testimony of a witness who later recants," and under such circumstances one could hardly disagree that "the trial court must first determine whether the recantation is reliable before considering a defendant's motion for new trial based upon the recantation." Macon, 128 Wash.2d at 804, 911 P.2d 1004. That is not the same as the defendant's constitutional right to testify being thwarted. West never had a chance to tell his story, let alone recant it. It is difficult to understand how the majority is able to accord a venerated constitutional right the same status as perjury.
The basis for the trial judge's ability to assess the reliability of a recantation has been summarized as follows:
The trial judge is in a peculiarly advantageous position, under the prevailing circumstances, to pass upon the showing made for a new trial. He has the benefit of observing the witnesses at the time of the trial, is able to appraise the variable weight to be given to their subsequent affidavits, and can often discern and assay the incidents, the influences, and the motives, that prompted the recantation. He is, therefore, best qualified to determine what credence or consideration should be given to the retraction, and his opinion is accordingly entitled to great weight. If the rule were otherwise, the right of new trial would depend on the vagaries and vacillations of witnesses.
Wynn, 178 Wash. at 288-89, 34 P.2d 900. Here we have no "vagaries or vacillations" from West concerning his trial testimony because we simply have no testimony. However, let us assume for argument's sake that one could accept the highly strained analogy between a witness's recanted testimony and the frustration of a defendant's constitutional right to testify. If that were so, it would necessarily follow from Wynn that it was only the judge who presided at the trial, as was not the case here, who could properly make the post-trial assessment of the impact of West's proferred testimony. Wynn, 178 Wash. at 288-89, 34 P.2d 900; see also State v. Barry, 25 Wash.App. 751, 758-59, 611 P.2d 1262 (1980) ("In passing upon the question of whether newly discovered evidence will probably result in a different outcome upon retrial, the trial court .... may utilize the knowledge that it gained from presiding at the trial. ...") (emphasis added; citations omitted) (citing United States v. Curry, 497 F.2d 99 (5th Cir. (1974)). Thus the majority even violates its own inapplicable rule.
After citing its inapposite recantation cases, the majority relies upon two decisions of the Court of Appeals wherein one factually similar event did arise: an ineffective assistance of counsel claim was made. See Majority op. at 9 (citing State v. Maurice, 79 Wash.App. 544, 903 P.2d 514 (1995); Dorsey v. King County, 51 Wash.App. 664, 754 P.2d 1255 (1988)). However, these cases, too, are distinguishable. As was true with the recantation cases, these cases involved the testimony of third parties. In Dorsey and Maurice, the question was whether defense counsel should have introduced testimony from witnesses not heard from at trial, witnesses whom the defendants argued would have provided exculpatory testimony if they had testified. The Court of Appeals in both cases found that defense counsel's performance was deficient in not introducing this testimony, but found no prejudice in this failure  remanding, in the case of Maurice, to the trial court for a determination of whether prejudice resulted. See Maurice, 79 Wash.App. at 552, 903 P.2d 514. Again, however, this is a different matter entirely from *626 the defendant himself being unable to exercise his constitutional right to testify.
JOHNSON, MADSEN and SANDERS, JJ., concur.
I am uncomfortable with relegating the deprivation of a constitutional right so fundamental as the right of a criminal defendant to testify in his or her own defense to the realm of harmless error, although I understand that this is the rule that follows from Robinson. I am even more uncomfortable with allowing a judge uninvolved with the trial itself to assess the "believability" of the testimony that the defendant might have given there had he or she been free to testify. Perhaps it is old-fashioned, but I believe that the constitution demands that a criminal defendant's credibility is a matter better left to the unanimous, contemporaneous assessment of twelve jurors than to the retrospective guesswork of a single judge acting "as a thirteenth juror." State v. Williams, 96 Wash.2d 215, 227, 634 P.2d 868. Because precedent does not support this practice that the majority approves, I dissent.
NOTES
[1] Where prior crimes evidence is sought to impeach a defendant who is testifying on his own behalf, the trial court must balance the importance of the jury hearing that defendant's testimony against the importance of its knowing of the prior conviction as an aid in evaluating the defendant's credibility as a witness. State v. Alexis, 95 Wash.2d 15, 19, 621 P.2d 1269 (1980).
[2] Judge Velie, the trial judge during West's original trial, had been unseated in a recent election.
[3] Although Judge Roper did not preside over West's original trial, he was still able to determine the impact of West's testimony by evaluating West's statements in light of the substance of the evidence presented at trial. The credibility determination at a remand hearing is not based on demeanor evidence. A decision as to whether a witness's testimony would have affected the outcome of a trial must be based on the weight of the evidence, not on the judge's subjective impressions of the witnesses after viewing their testimony.
[1] The prior convictions in Hill, unlike those of West, have been reversed and were thus "voided and stood for naught." Hill, 83 Wash.2d at 561, 520 P.2d 618. "To permit their use for impeachment purposes had the defendant taken the stand in his own defense would clearly have been prejudicial error." Hill, 83 Wash.2d at 561, 520 P.2d 618. However, this fact certainly does not make Hill distinguishable. Also unmentioned by the majority is the fact that Judge Roper, upon remand, did rule that West's convictions were inadmissible. He found that the most recent of these convictions was in 1968, and that West's past second degree murder conviction "was too old and too prejudicial, and bore too little relation to the Defendant's propensity to tell the truth." Clerk's Papers (CP) at 24 (citing State v. Alexis, 95 Wash.2d 15, 621 P.2d 1269 (1980)). Similarly, West's other convictions "would be inadmissible for impeachment purposes" due to both the "nature of the crimes and the staleness of same." CP at 24-25 (citing State v. Jones, 101 Wash.2d 113, 677 P.2d 131 (1984), overruled on other grounds by State v. Brown, 111 Wash.2d 124, 761 P.2d 588 (1988); Alexis, 95 Wash.2d 15, 621 P.2d 1269; ER 609). What these two cases have in common is the chilling effect upon the defendant's decision to testify that the introduction of such evidence might have had.