**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 53552-1-II |
| Respondent, | |
| v. | |
| MARCUS ALAN CHURCH, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, J.—While off duty, Sergeant Mathew McKnight helped an on-duty deputy apprehend Marcus Alan Church, who had an outstanding warrant. Church ran, McKnight followed Church, and Church assaulted McKnight. The State charged Church with violation of his community custody and third degree assault under RCW 9A.36.031(1)(a). A jury found Church guilty on both counts.

Church appeals his third degree assault conviction. He argues that the evidence was insufficient to convict him of assault in the third degree under RCW 9A.36.031(1)(a) because the evidence did not show that he intended to prevent or resist lawful apprehension. He claims that he was not intentionally avoiding arrest; instead, he believed he was being attacked. He also contends the evidence was not sufficient to show that McKnight was attempting to arrest him rather than only track his location for the on-duty deputy.

The State presented sufficient evidence to support a third degree assault conviction. The State needed to prove that Church assaulted another, that the apprehension was lawful, and that Church was attempting to avoid the apprehension. The State did not need to prove that, at the time of the assault, Church understood that the person apprehending him was a police officer or that the arrest was lawful. We affirm Church's conviction for third degree assault.

FACTS

I. ARREST

Deputy Scott Robb responded to an incident on Hunting Road in Lewis County, Washington. On arrival, Robb saw Church walking toward the house where Robb had been called. Church was wearing a black hooded sweatshirt with the hood up over his head, and he hid his face when Robb spoke with him. After they spoke, Church went inside the house and Robb talked with some other people on the property.

Robb then called McKnight, who lived across the street from the house. McKnight was not on duty at the time. Robb noted that Church looked familiar, but Robb did not remember his name. McKnight was familiar with Church based on photographs he had previously viewed.

As Robb went into the house, McKnight was looking out his window, and he saw Church run from the back of the house. Robb called dispatch, who reported that Church had a warrant. McKnight called Robb and told him that Church was "running eastbound away from the residence through people's back yards." Verbatim Report of Proceedings (VRP) at 117. McKnight was in plainclothes. McKnight ran after Church because he knew Church had a Department of Corrections escape from community custody warrant, he knew Robb was alone, and he hoped to keep Church in sight. McKnight started to run parallel to Church in the street, and he provided updates to Robb by phone. Robb got into his car, unable to run because of a knee injury.

McKnight did not speak to Church until Church came to a cross street and came around a corner. McKnight yelled at Church to stop and identified himself as a police officer. Church did not stop and McKnight continued to follow him, jogging. Church then turned and said, "'[S]eriously?'" and balled up his fists. VRP at 118-19. McKnight said, "'Hey, you need to stop.

2

Police. Just stop.'" VRP at 119. McKnight then heard Church say something indicating he did not believe McKnight was a police officer.

McKnight continued to jog behind Church and tell him to stop. McKnight was not sure where Robb was. Church turned and balled up his fists again. McKnight tucked his head and then felt a strike on his head and felt something pull the back of his shirt toward Church. Up to this point, McKnight had not touched Church.

After being hit, McKnight got Church to the ground and sat on his stomach, controlling him until Robb arrived. The entire incident, including the running, lasted around 30 seconds. When Robb arrived, McKnight helped him detain Church. Robb called dispatch and they confirmed Church's warrant was active. Robb placed Church under arrest.

## II. TRIAL AND VERDICT

The State charged Church with failure to make contact with his community corrections officer under RCW 72.09.310 and third degree assault under RCW 9A.36.031(1)(a), alleging that the assault was committed with intent to prevent or resist lawful apprehension or detention. The testimony provided during trial was consistent with the facts recited above.

Both the State and Church questioned McKnight about his intent as he was chasing Church. McKnight testified that he was "[a]ttempting to assist the deputy in bringing [Church] into custody." VRP at 125. McKnight said that he would have apprehended Church if Church had obeyed McKnight's verbal commands. "If he would have obeyed verbal commands and got down onto the ground and placed his hands behind his back, I guess you could consider that being apprehended . . . it's not what happened." VRP at 128. The State then clarified, "[W]as your intent

in pursuing Mr. Church to assist Deputy Robb in arresting him?" McKnight answered "yes." VRP at 131.

The to convict instruction for third degree assault recited the following elements:

> To convict the defendant of the crime of assault in the third degree, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1)    That on or about March 30, 2019, the defendant assaulted Mathew McKnight;
> (2)    That the assault was committed with intent to prevent or resist the lawful apprehension or detention of the defendant; and
> (3)    That this act occurred in the State of Washington.

Clerk's Papers (CP) at 37.

The jury was also instructed on the definition of "intent." "A person acts with intent or intentionally when acting with the objective or purpose to accomplish a result that constitutes a crime." CP at 39.

The jury found Church guilty of both offenses. Church appeals only his third degree assault conviction.

ANALYSIS

SUFFICIENCY OF THE EVIDENCE

Church does not challenge the lawfulness of the arrest, nor does he contend that the State failed to prove an assault occurred. Church argues that the evidence was insufficient to convict him of assault in the third degree because the evidence did not show that he intended to prevent or resist lawful apprehension when he assaulted McKnight. Church claims that he was not intentionally avoiding arrest; instead, he believed he was being attacked. He also contends that the evidence was not sufficient to show that McKnight was attempting to arrest him rather than just track his location for Robb. We disagree.

A.      Elements of Third Degree Assault and Standard of Review

Under RCW 9A.36.031(1)(a), a defendant can be convicted of assault in the third degree if the State proves beyond a reasonable doubt that they resisted a lawful apprehension and an assault occurred in the resistance. *State v. Goree*, 36 Wn. App. 205, 209, 673 P.2d 194 (1983). "A person is guilty of assault in the third degree if he or she, under circumstances not amounting to assault in the first or second degree[,] . . . [w]ith intent to prevent or resist . . . the lawful apprehension or detention of himself, herself, or another person, assaults another." RCW 9A.36.031(1)(a). The primary purpose of the statute is "'to *prohibit* assaultive behavior which interferes with the custodian's lawful obligations to insure a peaceful and orderly custody.'" *Goree*, 36 Wn. App. at 209 (quoting *State v. Jury*, 19 Wn. App. 256, 269, 576 P.2d 1302 (1978)).[1] As discussed in more detail below, the State did not have to prove that Church knew or understood that the apprehension was lawful. *Id.*

"'Evidence is sufficient to support a conviction if, after viewing the evidence in the light most favorable to the State, it allows any rational trier of fact to find all of the elements of the crime charged beyond a reasonable doubt.'" *State v. Yishmael*, 195 Wn.2d 155, 177, 456 P.3d 1172 (2020) (quoting *State v. DeVries*, 149 Wn.2d 842, 849, 72 P.3d 748, (2003)); *see also*, *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Appellate courts draw all reasonable inferences in favor of the State and assume the truth of the State's evidence. *State v. Scanlan*, 193 Wn.2d 753, 770, 445 P.3d 960 (2019), *cert. denied*, __ U.S. __, 140 S. Ct. 834, 205 L. Ed. 2d 483 (2020). "'Credibility determinations are for the trier of fact and cannot be reviewed on appeal.'"

---

[1] *Goree* addressed a prior version of the statute. Although the language was slightly different, the elements were essentially the same and any differences are immaterial to this analysis.

*State v. Bajardi*, 3 Wn. App. 2d 726, 733, 418 P.3d 164 (2018) (quoting *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990)). Circumstantial evidence is not any less reliable or probative than direct evidence. *State v. Kintz*, 169 Wn.2d 537, 551, 238 P.3d 470 (2010).

B.    Intent and Lawful Apprehension

Church argues the evidence was insufficient to show that he had the intent to resist lawful apprehension because he did not know McKnight was a police officer, he did not know he was being lawfully apprehended, and he instead believed he was being attacked.

1.  Intent to resist lawful apprehension

Two cases illustrate courts' interpretation of the third degree assault statute with regard to intent to resist lawful apprehension. First, in *Goree*, Goree ran from uniformed police, but he claimed he did not know they were apprehending him because of an outstanding warrant. 36 Wn. App. at 206-07. Goree claimed he did not know about the warrant, but at trial, its existence was not in dispute. *Id.* Goree argued that "absence of knowledge of the lawfulness of the arrest meant the State could not prove intent to prevent a lawful apprehension." *Id.* at 207.

Division Three disagreed, concluding that "[t]he law does not envision that all parties have to be in agreement or even understand the arrest is lawful at the time of arrest. The facts show [Goree] intended to resist apprehension; the apprehension was lawful and an assault occurred in the resistance." *Id.* at 209 (footnote omitted). A defendant may not apply a subjective standard to the statute because it would allow the "one being arrested to decide whether he considers the arrest lawful and to decide the level of resistance he wishes to use." *Id.* "The word 'lawful' in the statute is to prevent the State from prosecuting one who has used force to prevent an unlawful arrest." *Id.* The State was not required to establish that the defendant subjectively knew that the arrest was

6

lawful. *Id.* at 208-09. Thus, the evidence was sufficient to convict where it showed that the defendant intended to resist apprehension, that the apprehension was lawful, and that an assault on a police officer occurred in defendant's resistance to that apprehension. *Id.*

Ten years later, in *State v. Belleman*, 70 Wn. App. 778, 782, 856 P.2d 403 (1993), Division One followed *Goree* and offered additional reasoning. In *Belleman*, the defendant ran from and then assaulted a uniformed police officer. *Id.* at 779-80. He then claimed he did not know the person apprehending him was a police officer. *Id.* at 780. The State charged Belleman under RCW 9A.36.031(1)(a). *Id.* at 781.

While *Belleman* involved the propriety of a self-defense instruction, the court explained that "RCW 9A.36.031(1)(a) does not explicitly require that the defendant know the arrestor is a police officer, something the Legislature could easily have mandated" had it intended to do so. *Id.* at 782. The court also explained that it did not matter whether the apprehending person was an officer or a private citizen, so long as the apprehension was lawful because someone other than a police officer can engage in a lawful apprehension or arrest. *Id.* Thus, the State was not required to prove that the defendant knew the person conducting the apprehension was a police officer. *Id.* at 782-83. The defendant's subjective assessment was irrelevant. *Id.* at 783.

In summary, under *Goree*, the State must prove that the defendant assaulted another, that the defendant was attempting to avoid apprehension, and that the apprehension was lawful. *Goree*, 36 Wn. App. at 209. And under *Belleman*, the State does not need to prove that the defendant

understood that the arrest was lawful or that the person performing the arrest was a police officer. *Belleman*, 70 Wn. App. at 782.[2]

### 2. Sufficiency of the evidence

Here, Church does not contest that his arrest was objectively lawful, but he argues that he believed he was being attacked. Church asserts that when McKnight jogged parallel to Church and indicated he was a police officer, Church did not believe McKnight because McKnight was in plainclothes. But under *Goree* and *Belleman*, Church's subjective understanding does not matter. *See Goree*, 36 Wn. App. at 209; *Belleman*, 70 Wn. App. at 782. The State did not need to provide evidence that Church understood the apprehension was lawful.

Church also argues that he was unaware McKnight was a police officer. But under *Belleman*, whether McKnight was a police officer did not matter so long as the apprehension was lawful. 70 Wn. App. at 782. The State correctly argues, and Church agrees, that RCW 9A.36.031(1)(a) makes it a crime to assault any individual who is in the process of lawfully detaining, apprehending, or executing lawful process, regardless of whether the person assaulted is a private citizen or a law enforcement officer. Thus, subjective knowledge that the person performing the arrest is a police officer is not required under the statute.[3]

---

[2] Church argues that permitting the State to prove intent without establishing the defendant knew he was being lawfully arrested or detained made sense under *Goree* "35, 50, or 70 years ago," but today, the relationship between the community and police is different. Br. of Appellant at 7. Although we are not bound by *Goree* and *Belleman*, Church offers no more specific reason to depart from the reasoning in these cases and we decline to do so.

[3] By analogy, *State v. Brown* also supports this interpretation of RCW 9A.36.031(1)(a). 140 Wn.2d 456, 470, 998 P.2d 321 (2000). *Brown* addresses intent in the context of a violation of RCW 9A.36.031(1)(g), which is specific to assaulting a law enforcement officer performing official duties. *Id.* In *Brown*, the defendant claimed he did not know that the officer was an officer and that

Moreover, even though McKnight was in plainclothes, he twice identified himself to Church as a police officer and commanded Church to stop. McKnight heard Church say something indicating he did not believe McKnight was a police officer. But viewing the evidence in the light most favorable to the State, the jury could have weighed the evidence, including McKnight's testimony that he twice announced himself as a police officer, and concluded that Church understood McKnight was a police officer who was trying to apprehend him.

In addition, Church contends the evidence was insufficient because, he says, McKnight did not intend to apprehend him. Yet even if McKnight was only tracking Church's location to assist Robb, that is sufficient under the statute. As the State correctly argues, nothing in the plain language of RCW 9A.36.031(1)(a) requires the assaulted person to be the same person lawfully apprehending the defendant. Even if the jury believed that Robb was attempting to apprehend Church on his outstanding warrant, and McKnight was only assisting by tracking Church's location, the jury could conclude that the assault on McKnight met the elements of third degree assault. *See Belleman*, 70 Wn. App. at 782; RCW 9A.36.031(1)(a).

Finally, this argument also fails on the facts because the evidence was sufficient to show that McKnight *was* engaging in an apprehension. At trial, McKnight stated he was "[a]ttempting to assist the deputy in bringing [Church] into custody." VRP at 125. On redirect, McKnight answered "yes" when asked, "[W]as your intent in pursuing Mr. Church to assist Deputy Robb in

---

he did not know he was performing official duties. *Id.* The Washington Supreme Court held that "'the State is not required to prove the defendant knew either that the victim was a law enforcement officer or that the victim was performing official duties at the time of the assault.'" *Id.* at 464-65 (quoting *State v. Brown*, 94 Wn. App. 327, 347, 972 P.2d 112 (1999)).

arresting him?" VRP at 131. From this testimony, a rational trier of fact could conclude that McKnight intended to lawfully apprehend Church.

In sum, McKnight said he was a police officer and ordered Church to stop. Church ran, ignored verbal commands, and hit McKnight. Reviewing the evidence in the light most favorable to the State, we hold that there was sufficient evidence for a rational trier of fact to find that Church assaulted McKnight with intent to prevent or resist lawful apprehension, and Church does not contest that his apprehension was lawful.

## CONCLUSION

We affirm Church's conviction for third degree assault.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, J.

We concur:

Worswick, P.J.

Maxa, J.