IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Personal Restraint Petition of: | No. 83218-2-I |
| GEORGE DONALD HATT, JR., | DIVISION ONE |
| Petitioner. | UNPUBLISHED OPINION |

DíAZ, J. — In this personal restraint petition (PRP), George Donald Hatt, Jr. claims he received ineffective assistance of counsel during plea negotiations with the State and at several points during the testimonial phase of his trial, for among other crimes, murder in the first degree. We deny his petition.

## I. FACTS

In November 2015, Hatt shot, killed, and buried Andrew Spencer. After his trial in May 2017, the jury found Hatt guilty of murder in the first degree while armed with a firearm, unlawful possession of a firearm in the second degree, possession of an unlawful firearm, and tampering with physical evidence. In July 2017, the trial court sentenced Hatt to 434 months of confinement based on a calculated offender score of four.

Citations and pin cites are based on the Westlaw online version of the cited material.

Hatt appealed to this court and, in 2019, we affirmed his convictions but remanded for resentencing due to an incorrect offender score. State v. Hatt, 11 Wn. App. 2d 113, 121, 452 P.3d 577 (2019). Hatt was resentenced in September 2020 with a corrected offender score of three. In 2021, Hatt appealed the recalculated offender score, successfully challenging the designation of one of his prior felony convictions and we again remanded for resentencing.[1] State v. Hatt, No. 81994-1-I, slip op. at 1 (Wash. Ct. App. Nov. 15, 2021) (unpublished), https://www.courts.wa.gov/opinions/pdf/819941.pdf.

In this timely PRP,[2] Hatt again challenges his convictions, arguing that he received ineffective assistance of counsel during his trial.

## II. ANALYSIS

Post-conviction relief through a PRP is reserved for extraordinary circumstances. In re Kennedy, 200 Wn.2d 1, 12, 513 P.3d 769 (2022) (citing In re Pers. Restraint of Coats, 173 Wn.2d 123, 132, 267 P.3d 324 (2011) (internal quotation marks omitted)). A petitioner may only obtain relief through a PRP by demonstrating actual and substantial prejudice based on constitutional error, or "a fundamental error of law that results in a complete miscarriage of justice." In re

---

[1] One of Hatt's prior convictions was incorrectly included on his judgment and sentence as a class B rather than a class C felony. State v. Hatt, No. 81994-1-I, slip op. at 1 (Wash. Ct. App. Nov. 15, 2021) (unpublished), https://www.courts.wa.gov/opinions/pdf/819941.pdf.

[2] After we affirmed Hatt's convictions in 2019, he sought review by the Washington Supreme Court, which was denied on April 1, 2020. He then filed a Petition for Writ of Certiorari with the United States Supreme Court, which was denied on October 5, 2020. Hatt originally filed this PRP in September 2021, which was within the one-year time limit required by RCW 10.73.090(3)(c).

Swenson, 158 Wn. App. 812, 817, 244 P.3d 959 (2010) (citing In re Pers. Restraint of Cook, 114 Wn.2d 802, 813, 792 P.2d 506 (1990)). A petitioner bears the burden to make this showing by preponderance of the evidence. In re Pers. Restraint of Yates, 177 Wn.2d 1, 17, 296 P.3d 872 (2013).

In this PRP Hatt argues that his defense attorney provided ineffective assistance of counsel on multiple grounds.

The state and federal constitutions entitle criminal defendants to effective assistance of counsel. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To succeed on an ineffective assistance claim, a petitioner must meet the two-prong Strickland test: (1) show that his counsel's performance was *deficient* and (2) that counsel's deficient performance was *prejudicial*. State v. Estes, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017) (applying Strickland, 466 U.S. 668 at 687 (emphasis added)). A petitioner's failure to prove either prong ends our review. State v. Brown, 159 Wn. App. 366, 371, 245 P.3d 776 (2011).

As to the former, counsel's performance is deficient only where it falls below an "objective standard of reasonableness based on consideration of all the circumstances." Estes, 188 Wn.2d at 458. We apply a strong presumption that counsel provided a defendant with effective representation. Matter of Hopper, 4 Wn. App. 2d 838, 844, 424 P.3d 228 (2018). A petitioner must rebut this presumption by establishing the "absence of any legitimate trial tactic that would explain counsel's performance." Matter of Lui, 188 Wn.2d 525, 539, 397 P.3d 90 (2017).

As to the latter, counsel's performance is prejudicial to a defendant only where there is a "reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different." State v. Grier, 171 Wn.2d 17, 34, 246 P.3d 1260 (2011) (quoting State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)). "Reasonable probability" is not merely a "conceivable effect on the outcome" but rather, a "probability sufficient to undermine confidence in the outcome." Estes, 188 Wn.2d at 458 (internal citations omitted).

We review claims of ineffective assistance of counsel de novo. Lui, 188 Wn.2d at 538.

A. INEFFECTIVE ASSISTANCE OF COUNSEL DURING PLEA NEGOTIATIONS

Hatt claims that he was denied effective assistance of counsel during plea negotiations.

Defendants are entitled to effective assistance during plea bargaining to assist them in "making an informed decision as to whether to plead guilty or to proceed to trial." Estes, 188 Wn.2d at 464 (quoting State v. A.N.J., 168 Wn.2d 91, 111, 225 P.3d 956 (2010)). When making an ineffective assistance of counsel claim related to plea negotiations, a petitioner must show that competent advice would have changed the outcome of the plea process, and there is a "reasonable probability that the plea offer would have been presented to the court." State v. Drath, 7 Wn. App. 2d 255, 267, 431 P.3d 1098 (2018) (quoting Lafler v. Cooper, 566 U.S. 156, 163, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012)).

i.   Informing Hatt Of Mandatory Minimums for First Degree Murder and The Weapon Enhancement

Hatt first claims that he was denied effective assistance of counsel during plea negotiations, alleging that his defense attorney did not inform him of the mandatory minimums for first degree murder and the weapon enhancement and he was therefore unable to make an informed decision about whether to plead guilty or proceed to trial. He maintains that his rejection of the State's plea offer was involuntary because he did not understand the bargain's terms, and if he had known he would have to serve a 300-month sentence upon conviction, there was a reasonable likelihood he would have taken the plea bargain. The State contends that Hatt cannot establish prejudice because he has failed to present evidence that a plea deal existed. We agree with the State.

Hatt presents evidence from his sentencing hearing that his counsel may have misunderstood that Hatt's conviction for murder in the first degree carried a 20-year mandatory sentence. In the defense's sentencing memorandum, counsel asked the court to impose a 10-year total sentence. The State explained in its supplemental sentencing memorandum and at the sentencing hearing that the statute imposed a minimum of 20 years for murder in the first degree and an additional five years for the firearm enhancement.

However, even if Hatt's counsel was deficient in inaccurately conveying the mandatory minimums to Hatt, Hatt fails to show that he was prejudiced during plea negotiations because the record is clear that there was no plea offer from the State.

Any semblance of negotiations between the parties started in March 2017, when the trial court held a hearing to discuss the State's amended information.

5

The prosecutor noted that defense counsel wished to answer a question from Hatt regarding "his client's right to plead guilty at an amended information." The prosecutor indicated he believed Hatt's counsel "answered those questions" and "will be pleading not guilty to these counts." The prosecutor went on to tell the court:

> I would like to indicate for the record that there's been limited discussion at all regarding some kind of resolution in this case. [Defense attorney], who is Mr. Hatt's primary attorney, and I have spoken a couple times.
>
> There was at least -- I don't know if I want to use the word "discussion," but the subject of possible plea to a murder in the second degree with a firearm enhancement was at least broached. It wasn't discussed at any length, but it was at least raised, and *there didn't seem to be an interest on the part of the defendant to plead to that. . . .*
>
> *I have had no indication from [defense counsel] that his client has any interest in even broaching the subject of a murder 2 plea*, but I wanted to at least make it clear on the record that these are the ranges we're looking at. If -- before this or before I -- we arraign him on this amended information, there was a discussion of murder 2 with firearm enhancement. It would be something I would at least consider and talk to my supervisors about. But it doesn't -- to my knowledge, we're not headed that way.

(emphases added).

The trial court then asked the prosecutor to clarify these statements:

> THE COURT: You're not telling me that there is some offer that [defense counsel] has, to your understanding, not communicated to Mr. Hatt.
>
> [PROSECUTOR]: No, I'm not suggesting that at all.
>
> THE COURT: Okay.

[PROSECUTOR]: From the sound of it, [defense counsel] and his client, from what little I've heard from [defense counsel] on the subject, have broached the possibilities.  He just didn't – [defense counsel] didn't come to me saying, hey, my client wants to plead guilty to murder 2 with a firearm enhancement.

THE COURT: Nor have you offered it.

[PROSECUTOR]: *Nor have I specifically offered it.*  What [defense counsel] and I did is, after court one day, talk about how this case, in the most broadest terms, might resolve itself, just the ideas of these things.  And at no point in the last year have either of us come up with, you know, a resolution that we've put to the other that's resolved itself.

(emphasis added).  Hatt pled not guilty to the amended charges.

In April 2017, Hatt filed a motion to dismiss the amended charges, in which he claimed that he had declined the State's plea offer.  In its response, the State noted, "In this case *there was never a formal plea offer made*.  The defense and the State discussed possibilities, but neither side made a formal offer.  Therefore . . . the only option for [Hatt] was to plead as charged."  (emphasis added).  Hatt did not dispute the prosecutor's statement that there had never been a plea offer from the State.

The record, thus, clearly indicates there was no plea deal offered to Hatt. Though there was an invitation to discuss potential plea offers—offers which, if explored, might have included a reduced murder charge—there is no record of such an offer.  In turn, without a plea offer from the State, Hatt fails to demonstrate that he was actually prejudiced during negotiations by any shortcomings in defense counsel's representations about the mandatory minimums.[3]

---

[3] Even if the State had made Hatt a plea offer with a reduced charge, Hatt provides no evidence that the outcome of his case would have been different,

Without demonstrating prejudice, Hatt fails to show that he received ineffective assistance of counsel.

ii. Accurately Calculating Offender Score

Hatt next claims that he received ineffective assistance of counsel because his defense attorney did not accurately calculate his offender score so he was unable to make an informed decision about whether to plead guilty or proceed to trial. We disagree.

Even where Hatt's defense attorney failed to properly calculate his offender score, as there was no plea offer from the State Hatt fails to demonstrate that he was prejudiced.

B. INEFFECTIVE ASSISTANCE OF COUNSEL WHERE COUNSEL SHOWED THE JURY PHOTOGRAPH OF DECEASED VICTIM

Hatt contends that he received ineffective assistance of counsel when his defense attorney displayed an admitted photograph of the deceased victim during his direct examination.

Prior to trial, the State motioned the court to admit some of the medical examiner's photos for both the testimonies of the medical examiner, Dr. Selove, and the forensic anthropologist, Dr. Taylor. In a motion in limine, Hatt sought to prevent the State from showing the jury the excavation and autopsy photographs of the victim, arguing that this evidence was unduly prejudicial, as they were "quite

---

namely: that he would have accepted a plea deal with a reduced murder charge. A PRP must contain more than a "conclusory allegation or merely a claim in broad general terms." Matter of Rhem, 188 Wn.2d 321, 327, 394 P.3d 367 (2017). Hatt merely asserts that if he would have known the minimum sentence there "is more than a reasonable likelihood" he would have accepted a plea bargain.

8

gruesome," irrelevant because Hatt admitted to killing Spencer, and cumulative. The State countered that the photographs supported the charge of tampering with evidence because Hatt was accused of burying and burning the victim in a fire pit.

The trial court admitted the photographs during the testimony of Dr. Selove and Hatt objected to the admission of some of them on the ground of cumulativeness.[4]

Hatt elected to testify. During defense counsel's direct examination of Hatt, counsel asked the State to display one of the previously admitted photographs of the victim's body:

> [DEFENSE COUNSEL]: Mr. Hatt, when you and Mr. Fincher buried Mr. Spencer, did he look like that?
>
> [HATT]: Not at all.
>
> [DEFENSE COUNSEL]: Did he look like Andrew Spencer?
>
> [HATT]: He looked like Andrew Spencer.  He didn't look like that.[5]

---

[4] The photographs at issue here were identified as Exhibits 311-358.  Three of the photographs depicting the bullet recovered from the victim's head were admitted during the testimony of a police detective earlier at trial.  Hatt only objected to Exhibits 315-340, but not Exhibits 311-314 or 341-358.  This was consistent with the focus of Hatt's pretrial objections on Exhibits 316, 318, 325, 326, and 327.

[5] The trial transcript does not indicate the number of the exhibit displayed in court.  But the parties agree that photograph was one of the State's admitted photographs of the victim's deceased body.

After the jury was excused, the court requested that in the future, counsel "employ a little bit of sensitivity. You know who is in the courtroom. Do you not?"[6] Defense counsel apologized, stating that "I was wanting to establish that fact[.]"

Now, Hatt insists that there was "nothing strategic or tactical" or any "legitimate purpose" in defense counsel's decision.[7] We disagree. Counsel's trial strategy was made evident prior to trial where defense counsel argued that since Hatt had never seen the victim's body in the state in which it was recovered, the evidentiary value of the photographs was limited and potentially irrelevant. Based on counsel's argument, it appears that counsel possessed a legitimate trial strategy in using the exhibit: to attempt to distance Hatt from the State's "gruesome" evidence. That this was counsel's strategic decision is also supported by counsel's statement of apology in which he explained he had just wanted to "establish that fact," presumably referring to the "fact" that Hatt had not seen the body in the condition in which it was found.

We need not comment on the effectiveness of counsel's choice here. We grant "exceptional deference" to counsel's strategic decisions. State v. McNeal, 145 Wn.2d 352, 362, 37 P.3d 280 (2002) (citing Strickland, 466 U.S. at 689). As

---

[6] From the record, the court was referring to the victim's family being present in the courtroom.

[7] Hatt alleges—without support in the record—that defense counsel acted solely to "arous[e] an emotional response from the [victim's] family[.]" In his briefing, Hatt includes a statement from his girlfriend at the time of the shooting, Lea Epsy, in which she claims that defense counsel told her that he displayed the photograph of the victim with the intention to upset the victim's family. We do not consider this allegation as Hatt fails to show that his claim is based on more than "speculation, conjecture, or inadmissible hearsay." In re Rice, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992).

Hatt fails to demonstrate that counsel acted without a legitimate strategy during direct examination, he cannot overcome the presumption that counsel provided him with effective representation. In the absence of defective performance, we need not analyze this issue further.[8]

## C. INEFFECTIVE ASSISTANCE OF COUNSEL FOR NOT OBJECTING OR RESPONDING TO FORENSIC EXPERT WITNESS TESTIMONY

Hatt next claims that he received ineffective assistance because his defense attorney did not object or respond to the expert witness testimony of the forensic anthropologist, Dr. Taylor. We disagree.

At trial, Hatt testified that he fired two bullets: one bullet shot in the victim's general direction that was intended only to be a "warning shot" and a lethal second bullet to the victim's head. This narrative was compatible with Hatt's argument that he killed Spencer in defense of others, or alternatively, in self-defense.

Evidence at trial, however, suggested that in addition to the victim's head, Hatt likely fired a shot into the victim's torso. But both examining experts, Dr. Selove and Dr. Taylor, indicated that it was difficult to definitively determine that it was a bullet that caused the victim's injury in that area. The inconclusive results of the examination could have been due in part to the burning and decomposition of the victim's body.

Dr. Taylor also testified that the post-recovery scrubbing of the victim's bones could have eliminated potential gunshot residue. Dr. Taylor testified that

---

[8] Hatt makes an additional argument that the photograph counsel displayed was so prejudicial that it warranted a mistrial. As we do not conclude that defense counsel's decision rose to defective performance we do not address Hatt's claims related to prejudice.

she examined the victim's bones after they had been removed from the crime scene, looking for "evidence of trauma." Dr. Taylor stated that she did find a "defect" in one of the victim's rib bones suggestive of a gunshot wound and embedded was a "green material" she believed was residue from the autopsy technician's cleansing sponge. The prosecutor then inquired:

[PROSECUTOR]: [I]f this was your office or you were setting up policies and procedures, would you recommend using that kind of sponge to clean bones like this?

[DR. TAYLOR]: No.

[PROSECUTOR]: Why not?

[DR. TAYLOR]: For that very reason. You would never scrub, especially you would not choose to scrub a defect. And it's possible -- I'm presuming that the person that was cleaning the bones did not recognize that as a defect because the rib was fragmentary. It was only upon putting them together that you realize that there is, in fact, a defect there. But you're also concerned that you're going to leave behind something of the sponge.

[PROSECUTOR]: Now, as far as your examination goes, could you see anything that impeded your investigation caused by that sponge use or the residue of the sponge?

[DR. TAYLOR]: No.

Hatt argues that it was during Dr. Taylor's testimony that defense counsel should have requested the jury be excused and "[a]ny number of motions, evidentiary rulings or instructions to the jury should have been heard by the court." Hatt further claims that his counsel's lack of objection did not provide the court with an opportunity to cure the error, strike the testimony, or provide a curative instruction.

12

Despite listing several possible actions counsel should have taken in response to Dr. Taylor's testimony, Hatt does not identify what testimonial "error" occurred, but instead merely alleges that the scrubbed defect constituted "altered evidence" requiring a spoliation instruction.

In order to demonstrate ineffective assistance of counsel on the basis that counsel failed to request a jury instruction, Hatt would need to show that he was actually entitled to the spoliation instruction, that counsel's performance was deficient for failing to request such an instruction, and he was subsequently prejudiced. State v. Johnston, 143 Wn. App. 1, 21, 177 P.3d 1127 (2007).

We do not need to address whether or not a spoliation instruction would have been appropriate here,[9] because Hatt again fails to overcome his burden to show that defense counsel's action, or inaction, was not a legitimate trial tactic. The lack of gunshot residue on the victim's rib bone supported Hatt's trial narrative that he had only shot Spencer once in the head, thus the potentially "altered" or missing evidence served to benefit Hatt's defense. This would have been a legitimate reason why, even if Hatt would have been entitled to an instruction, counsel elected not to object or request an instruction in response to Dr. Taylor's testimony. Hatt does not demonstrate that counsel's performance was deficient.

D. INEFFECTIVE ASSISTANCE OF COUNSEL WHEN CROSS-EXAMINING STATE'S BALLISTIC EXPERT

---

[9] Spoliation is defined as the "intentional destruction of evidence." Henderson v. Tyrrell, 80 Wn. App. 592, 605, 910 P.2d 522 (1996) (citing BLACK'S LAW DICTIONARY 1401 (6th ed. 1990)). To determine culpability of a party, courts examine "whether the party acted in bad faith or conscious disregard of the importance of the evidence, or whether there was some innocent explanation for the destruction." Id. at 609.

13

Finally, Hatt argues that his defense attorney provided ineffective assistance of counsel when preparing for, and cross-examining, the State's ballistic expert, Brian Smelser. We disagree.

A petitioner can overcome the presumption of counsel's competence by showing that defense counsel did not adequately prepare for trial, conduct appropriate investigations to assess possible defense strategies, or understand the facts of the case by interviewing witnesses. State v. Byrd, 30 Wn. App. 794, 799, 638 P.2d 601 (1981) (quoting State v. Jury, 19 Wn. App. 256, 263, 576 P.2d 1302 (1978)). We will not find ineffective assistance of counsel for an attorney's cross-examination if counsel's performance "fell within the range of reasonable representation." Johnston, 143 Wn. App. at 20.

Hatt first claims that his counsel never interviewed any of the State's experts prior to trial. This is directly contradicted by the State, which provided evidence that defense counsel interviewed Smelser prior to trial.[10]

Hatt next claims that his counsel's cross-examination of Smelser was deficient because his questions about the impact of heat application to bullets and gun modifications "did not support [Hatt's] claim of self-defense" and "opened the door" to the State's questioning about modifications.

---

[10] We also note that even if defense counsel had not interviewed Smelser, that choice may have been reasonable in context. There is no requirement that counsel must interview witnesses prior to trial as an attorney has "wide latitude and flexibility in his choice" of strategy. Matter of Pirtle, 136 Wn.2d 467, 488, 965 P.2d 593 (1998) (quoting State v. Piche, 71 Wn.2d 583, 590, 430 P.2d 522 (1967)). Counsel may elect to prepare for trial by reviewing other available evidence. Id.

There was nothing deficient about defense counsel asking Smelser about how the conditions of the bullet may have impacted his professional analysis:

> [DEFENSE COUNSEL]: [I]n this case, you found that it was inconclusive, right, that this -- that the bullet in question here that was found in Mr. Spencer was fired from what is State's Exhibit 1; is that correct?
>
> [SMELSER]: That's correct. [. . .]
>
> [DEFENSE COUNSEL]: Here in this particular case, you had a bullet that was fired from a firearm and found in the skull of a decedent which was subjected to higher than normal temperatures. . . . Does that at all impact or impair your ability to make an analysis?
>
> [SMELSER]: Well, when the bullet is inside somebody, even though they are experiencing high temperatures, I wouldn't expect that particular issue to influence that bullet.

Defense counsel also elicited testimony about other ways a bullet could be damaged and a ballistic analysis could be inconclusive. By inquiring about different conditions that could impact the bullet analysis, defense counsel was presumably highlighting the uncertainties of ballistic evidence, which would benefit Hatt's defense.

Hatt's counsel's questioning about the gun modification also benefitted Hatt's defense strategy, by pointing out that Hatt's gun may not have been a precise shooting instrument:

> [DEFENSE COUNSEL]: I want to talk about the modification to this gun. They don't impact the functionality of that gun, the modifications that have been made?
>
> [SMELSER]: No. [. . .]
>
> [DEFENSE COUNSEL]: Is it fair to say that this firearm, State's exhibit Number 1, compared to the other firearm in that image there or the unmodified version is less precise? More precise? The same? Can you tell?

15

[SMELSER]: Well, you would consider it a little less precise mainly based on what's called sight radius, the distance between the front and rear sight[.]

As for Hatt's claim that defense counsel's cross-examination opened the door to State's questioning about his gun modifications, the record is clear that the State asked Smelser about the gun modifications during direct examination, prior to defense counsel's questioning.

Hatt fails to demonstrate that his defense counsel's performance in preparing for or cross-examining the State's ballistic evidence was defective.

III.    CONCLUSION

Based on our analysis above, we conclude that Hatt has failed to show that he received ineffective assistance of counsel at his trial that would entitle him to post-conviction relief. We deny his petition.

Díaz, J.

WE CONCUR:

Chung, J.

Mann, J.

16